Good morning. Nicholas Honchariw, appearing for Appellant Plaintiff Honchariw, Trustee. Good morning. Good morning. I'd like to reserve three minutes, if I can, for possible rebuttal. At the heart of this longstanding litigation is the concept of rightness, which is a concept which has been subject to much confusion during the underlying proceedings. As shown in this case, the California procedures for just compensation for inverse condemnation are not reasonable, certain, and adequate under Williamson in the case of taking claims for subdivision disapproval, which are not ripe at the time of disapproval. The reason for that simply is that under the subdivision statute of limitations of 90 days, if a claim, a taking claim, is not ripe within those 90 days, it is forfeited for all time, forever. The district court was in flat error in its ruling that the taking and due process claims were ripe upon subdivision disapproval in 2009 rather than approval in 2012. What had happened by 2012 that made them ripe that had not happened in 2009? There was a final definitive adjudication of permitted development of the property with a subdivision approval in 2012. But that was favorable to you, and you were trying to challenge something unfavorable to you. So how could it make your case more ripe to have something go in your favor than when you were actually given the denial that you're challenging? The taking was not simply the fact of a denial in 2009. In fact, if this case had been completed in two weeks after the disapproval in 2009, there would be very likely no possible claim for taking whatsoever. The taking occurred over the period of three years between disapproval and approval. The notion of the approval being an approval and somehow not at issue is a misguided notion. What the approval does is not provide a basis for objection. Nobody is objecting. Appellant plaintiff is not objecting to the fact of approval, to the subdivision decision reflected by the approval. What the approval does is it demarcates clearly under Williamson and under Norco what the extent of the possible taking is. Until there was a final determinative decision, a final definitive decision, which in this case happened to be in the form of an approval, nobody knew what the contours of the taking were. Was it a permanent taking? Was it a taking for three years? Was it a taking for seven years? What was the substantial economic impact of the taking upon the plaintiff? But why couldn't you in 2009 have, when you filed your mandamus action, also included a claim that says every day that goes by is a taking and then under California law you could first get an adjudication of whether it was a taking and then once that's determined and maybe it would take until 2012 to figure out for sure the amount of damages, then the second step is to file for damages. No. I think there is a very fundamental flaw in that analysis and in that question, which is anticipated by Williamson and anticipated in Norco. By the way, Norco was a decision that held rightness to accrue upon an approval, not upon a disapproval. In Norco there had been no agency or county decision up until that point. The action was to ask for a decision. But you had a decision that you, in fact, challenged with a mandamus action. No. In fact, there are a couple of reasons, a couple of thoughts. First of all, whether or not there had been any agency action, the final step, the step that demarcated rightness in Norco was a final approval. Secondly, in fact, there had been agency decision. After day 91 and what was at issue here was a 90-day deadline statute of limitations under Washington law, there was clearly a claim for due process and the local agency, in fact, did take action by specifically deferring action on the application. So there had been action by the agency. Sotomayor, I'm having a little problem understanding what the taking is. I thought, but I'm glad that you're here so that we can be sure that we understand this. I thought that the taking was the denial of administrative of the approval in 2009. That's where the taking began. That was the step that made the taking possible. But as of the disapproval on March 2009, there was no taking either. Your position is that you could not sue for the mistakes and errors and things that happened in 2009 until you had final approval? Correct. And that is the case. What case is that? If I can — Williamson makes — let me refer to Norco first of all. Norco specifically provided that not only is somebody in our position challenging a disapproval entitled to — There was no disapproval in Norco. There was no decision at all. Well, actually, in that case, a failure by the local agency to act within the 90-day limitation provided by statute. But in any event, Norco provided that in those circumstances where there is a claim that is still unripe and a plaintiff is not only entitled but is actually required to await the ripening of the claim, and that specific language from Norco, required. And the reason for that is explained in Williamson. So if you think your case is different from Norco because Norco had a — had no decision and your case did have a decision, then do you have anything else to rely on for the idea that you couldn't have made a takings claim as part of your mandamus petition? Williamson — Williamson, underlying Norco, makes very clear that it's not just a question of damages, but it's the very question of taking that has to await a final definitive decision. They're interrelated. It is not possible to have a notion of a taking as of disapproval and then somehow entirely separately a notion of damages for disapproval. But Williamson is about when you can come to Federal court, not when you can go to State court. Correct. And so it seems that in Hensler, the State court said what you should do in your situation is, as part of the mandamus petition, also bring your taking claim. And when you get an adjudication in State court, then you — under Williamson, eventually you can come to Federal court if you're still dissatisfied. But it seems like you missed a step in the State court, and I'm still not sure why you think that you didn't miss that step. The problem is that in 2009, when this was — when this was occurring, when the disapproval occurred, the clear California law had been stated by the California Supreme Court, and I'm quoting from Landgate, that specifically adopted Federal Williamson law on rightness. So while on the one hand you had a Hensler 90-day limitations period, on the other hand, you had a California Supreme Court decision that specifically said, and I'm quoting from Landgate, the United States Supreme Court has stated an essential prerequisite to the assertion of a takings claim is a final and authoritative determination of the type and intensity of development legally permitted on the subject property, quoting McDonald, which is the sister case to Williamson. And why wasn't — why wasn't that the 2009 decision, that you treat it as final for purposes of challenging it on one ground? You challenged it under NIMBY. So why wasn't it final for challenging it? No. I think it is very clear. I'm — if I can reserve my time with this last comment, I think it is very clear by the very fact that there was a subsequent decision by the Stanislaus County Board of Supervisors that the 2009 decision was not the final definitive decision on permitted use of the land. The issue is not whether it was final as to that particular application. The issue is whether it was final as to the ultimate question of the permitted development of the land. 2009 disapproval was not as manifest in the very fact that there was a 2012 approval, which, in fact, was the final definitive decision. And I — at this point, I'm down to a minute. Thank you. We'll give you — I'll give you two minutes for rebuttal because we took you over. Thank you. Good morning, Your Honors. May it please the Court. Matthew Zinn, appearing on behalf of Stanislaus County. Your Honors, I don't have a lot to say here this morning. I just want to respond to a couple of points that Mr. Honshu made. Mr. Honshu doesn't object to the Daniel — this Court's holding in Daniel or the other cases from four other circuits that if you procedurally default your state inverse claim, your takings — federal takings claim is not right. Instead, he claims that the procedure for compensation in this case as applied to him is inadequate. There's a variety of problems with that. The first, Your Honor, is that it is deeply counterintuitive, as Your Honors have recognized, to suggest that an action taken in Mr. Honshu's favor could be necessary to ripen his claim. The adverse final decision of the Board here was the denial in 2009. That was later overturned by the Court of Appeal. That — the fact that it was overturned by the Court does not mean that the agency's decision was not final. As Judge Freeland points out, that would mean that his initial writ action was unripe when he brought it in 2009. Mr. Honshu cites the Supreme Court, California Supreme Court's decision in Landgate. Interesting choice of case to cite. Landgate involved a situation where there was an initial writ action that invalidated the agency's decision. But in that action, the plaintiff joined a takings claim in the initial complaint at the time that they filed the writ action, alleging that — alleging that the decision was invalid as a matter of State law. So those claims can be brought together. But in the end, Your Honor — So he argues that if he had brought the claims together, there would have been an inordinate delay, and that that makes this an unavailable avenue. Do you have a response to that? Do you think there would be a delay by bringing the two claims together? I don't, frankly, understand how there is a delay — there would be a delay by bringing the claim earlier than he did. That seems kind of — seems counterintuitive to me. He said there would have been a delay in resolving his NIMBY claim. Well, what happened in Landgate, actually, Your Honor, is they severed the claims, they bifurcated the case, and they litigated the administrative mandamus on the State law issue first, and then they could come back to the takings issue, and then the takings issue went up to the California Supreme Court. So I don't see how that would result in delay. The real — the key point I want to make here, Your Honor, is it doesn't matter when the State claim accrued, because his takings lawsuit filed in December 2012 was too late, even if that claim accrued in 2012, in May, when the Board of Supervisors approved his subdivision. The 90-day — the 90-day statute of limitations had run at that point. So his — his State inverse claim was procedurally defaulted, even if it accrued — his Federal claim — excuse me, yes, his State inverse claim was procedurally defaulted, even if it accrued in 2012. So I — I confess I'm confused about why Mr. Honsher believes this to be dispositive of the case. The — the repeated references here to the accrual of his Federal takings claim are misplaced. His Federal takings claim never accrued because he procedurally defaulted his State inverse condemnation claim. Your Honors, if there are no further questions from the Court, I'm prepared to submit on the papers. Judge Torea, did you have any questions? I have no questions. Thank you. Thank you, counsel. Thank you. Let me see if I can squeeze things in in two minutes. Williamson, again, made clear that there is no taking until a claim is ripe, that the question of ripeness is not just a separate question of when does the taking occur and subsequent damages, they are interrelated. You cannot tell if a taking has occurred until you know, with the passage of time, in the case of a temporary taking, what have been the economic damages, the economic impact upon the plaintiff, what is the impact upon reasonable investment expectations. Let me note that Williamson, in particular — well, beginning with the observation that under Williamson, I believe it is clear that the claim only accrued, only became ripe upon approval in 2012, which demarcated finally what was allowable on the property. Williamson made clear that it is at that time that one takes a look at State remedies and has to pursue State remedies first. At that time, 2009 was long past. We were well past the 90-day limitation period. The only possible route we had, and we did take it, was to proceed under a two-step formula that was announced by Hensler as an exception to the 90-day limitation. In May 2012, the Subdivision Map Act 90-day statute of limitations was simply no longer applicable. It was not applicable to the 2012 approval because nobody was challenging that. It wasn't applicable to the 2009 disapproval because that had long been set aside in the writ action. What was at issue then is what is the statute of limitations, as had been anticipated by California courts, as in Patrick Media, for the underlying claims of taking an inverse and due process. And if there are any further questions, I'm happy to respond, but I'm out of time. Judge Torea, do you have any questions for counsel before he sits down? Not really. Thank you. Thank you, counsel. Thank you. The case is submitted. The case is submitted. Thank you.
judges: Torruella, Schroeder, Friedland